IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

ELANE M. FIELDS, )
)
        Plaintiff, )
)
v. ) Case No. CIV-07-395-FHS
)
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
)
        Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff Elane M. Fields (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. See, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial

---

Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. See generally, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

## Claimant's Background

Claimant was born on January 30, 1968 and was 38 years old at the time of the ALJ's decision. Claimant completed her high school education. Claimant has worked in the past as an explosives worker, furniture sales person, store manager, home health aide, sales representative, and a loan clerk. Claimant alleges an inability to work beginning February 24, 2004 due to cervical disc disease and depression.

## Procedural History

On October 12, 2004, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et*

*seq.*) and for supplemental security income under Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On February 23, 2006, a hearing was held before ALJ Lantz McClain in McAlester, Oklahoma. By decision dated January 11, 2007, the ALJ found that Claimant was not disabled. On September 20, 2007, the Appeals Council declined to review the ALJ's decision. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while certain of Claimant's medical conditions were severe, Claimant did not meet a listing or retain the residual functional capacity to perform her past relevant work but retained the RFC to perform a full range of sedentary work.

### Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to engage in a proper credibility determination; (2) failing to properly consider the opinions of Claimant's treating and examining physicians regarding her limitations; and (3) failing to demonstrate jobs are available at Step 5.

### Credibility Determination

Claimant asserts the ALJ failed to engage in a proper credibility analysis when he found Claimant's statements concerning

4

the intensity, persistence and limiting effects on her symptoms were not entirely credible. Claimant was treated by Dr. Qi Wan on August 14, 2000 with complaints of intermittent numbness of her left arm for several weeks, headaches and neck pain. His examination revealed no abnormalities. (Tr. 172). She was evaluated further by Dr. Belinda A. Savage-Edwards on September 24, 2002. All testing was normal. (Tr. 161-163).

Diagnostic imaging performed September 10, 2002 revealed only anterior osteophytes at C-5-C6. (Tr. 253). All other testing was normal. Id.

On October 8, 2003, Claimant was evaluated by Dr. Jim C. Martin. Claimant told Dr. Martin that she sustained an injury at work when a sofa standing up on a dolly fell over and struck her from behind, knocking her down and injuring her neck and back. She sought chiropractic care until her visit to Dr. Edwards. She presented to Dr. Martin complaining of pain in her neck which radiated into her right shoulder blade area. Claimant stated she had increased pain over her neck when she turned her head, especially to the right and looked up or down. She complained of increased pain when reaching out, pushing, pulling or lifting with her right upper extremity. She also experienced pain over her mid and low back area, radiating into her right hip and buttocks. Claimant "is essentially never pain-free, and she had difficulty performing her normal activities." (Tr. 182).

5

Upon examination, Dr. Martin found marked spasms in her neck and tenderness over the posterior cervical muscles bilaterally. He found Claimant had limited and painful range of motion of her cervical spine with flexion at 30 degrees, extension 20 degrees and rotation 50 degrees bilaterally. She exhibited a positive impingement test with rotation and extension to the right, and point tenderness over the right supracapular nerve. He found marked back spasms with tenderness over the thoracic and lumbar musculature with point tenderness over the right sacroiliac joint. Range of motion testing of her back revealed flexion to 40 degrees, extension zero degrees, lateral flexion 10 degrees bilaterally and rotation 10 degrees bilaterally. (Tr. 183).

Dr. Martin concluded that Claimant exhibited evidence of musculoligamentous injury to the cervical spine with sensory nerve injury and radiculopathy affecting her right shoulder blade area and right upper extremity. She exhibited evidence of significant musculoligamentous injury to the thoracic and lumbar spine with sensory nerve injury and radiculopathy affecting her right hip and right lower extremity. He found Claimant was 100% temporarily totally disabled and "will be for an indefinite period of time." Id.

On March 29, 2004, Claimant was attended by Dr. Emily Friedman in connection with her Worker's Compensation case. She noted Claimant had no anatomic misalignment, swelling, redness or heat to

Claimant's spine. Claimant showed no severe tenderness to palpation over the bony landmarks, spinous processes and facet joints. Dr. Friedman found normal sensation in both upper extremities and found decreased pinprick perception throughout the left lower extremity, not fitting any radicular pattern. Diminished flexion and decreased right rotation secondary to pain in regard to her neck. Claimant's lower back flexion was preserved, extension limited secondary to pain. Dr. Friedman found Claimant's right shoulder pain was an expression of her neck pain. She found Claimant is not temporarily totally disabled but was capable of performing light duty work. (Tr. 221-222).

Dr. Friedman continued her evaluation of Claimant's condition in a letter to the Worker's Compensation Court dated April 13, 2004. She noted Claimant's cervical MRI showed a small central disc herniation at C3-4 with all other discs essentially normal. (Tr. 219).

On May 3, 2004, Claimant underwent a discogram with Dr. Michael J. Carl. Dr. Carl concluded Claimant suffered from severely degenerative, severely painful intervertebral disc at C6-7, C5-6, C4-5, and C3-4 producing concordant pain in the neck and left arm. (Tr. 267-268).

In a May 11, 2004 report to the Worker's Compensation Court, Dr. Friedman reviewed the diagnostic study done on Claimant. She states Claimant experiences pain with injection at nearly all disc

levels, which lead her to believe surgery involving a multi-level fusion was not a treatment option. Dr. Friedman recommended conservative treatment, including a trial of epidural steroid injections at C6-7, physical therapy, and the use of an R-S stimulator. (Tr. 217).

On July 19, 2004, Dr. Friedman noted the injections made Claimant's condition worse. Claimant reported neck pain as an 8 out of 10 with numbness and tingling down her arm. Dr. Friedman established permanent work restrictions of no lifting greater than 30 pounds, no pushing or pulling greater than 50 pounds, and restricted reaching away from her body overhead. Other than continued medications, Dr. Friedman stated "[t]here is no indication for further continuing medical treatment" and found Claimant had reached maximum medical improvement. She also recommended vocational retraining because Claimant could not return to her previous occupation. (Tr. 213).

As reflected in an August 18, 2004 report, Claimant was evaluated by Dr. Russell F. Allen. Dr. Allen found Claimant had sustained severe injuries to her cervical spine and associated structures as well as her lower back with an aggravation of a pre-existing condition in her lower back. He determined Claimant had a range of motion of the cervical spine of 15 degrees standing angle, 20 degrees extension, 30 degrees flexion, lateral bending of 15 degrees bilaterally, and lateral torsion of 20 degrees

bilaterally. He noted Claimant's complaint of pain radiating into the right shoulder and arm. (Tr. 233).

Dr. Allen also performed range of motion testing of the lumbar spine. He found Claimant had a range of motion of 10 degrees standing angle, 5 degrees extension, 45 degrees hip flexion, 0 degrees lumbar flexion, and lateral bending of 5 degrees bilaterally. Id. Dr. Allen opined that Claimant would need periodic medical evaluation for the indefinite future in order to determine the need for additional medical or surgical care or prescription medications. Id.

On January 8, 2005, Claimant underwent a consultative examination with Dr. Jeremy Fullingim. Dr. Fullingim states in his report that Claimant has chronic neck pain with upper thoracic pain, secondary to distant injury without signs of nerve impingement; chronic low back pain, secondary to a similar injury, without radiculopathic symptoms; and chest pain, non-cardiac origin, most likely secondary to anxiety and muscle spasms. (Tr. 276-277). He found all range of motion normal. (Tr. 278).

On October 3, 2005, Claimant was evaluated by Dr. Darryl D. Robinson. Dr. Robinson found Claimant to be suffering from cervical degenerative disc disease, cervical radicular pain, clinical evidence of bilateral sacroiliac joint dysfunction, and chronic pain. (Tr. 316). He established work restrictions of no lifting, pushing or pulling more than 10 pounds and no repetitive

9

bending, twisting or stooping. Id.

In his decision, after recognizing these medical opinions, the ALJ found with regard to Claimant's assertions of pain that

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

(Tr. 21).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or

sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3. An ALJ cannot satisfy his obligation to gauge a claimant's credibility by merely making conclusory findings and must give reasons for the determination based upon specific evidence. Kepler, 68 F.3d at 391. Moreover, mere boilerplate language consisting of a rejection of a claimant's credibility due to the lack of medical evidence is insufficient. Hardman v. Barnhart, 362 F.3d 676, 678 (10th Cir. 2004).

In this case, the ALJ should have linked his findings to the factors listed in Soc. Sec. R. 96-7p, rather than merely state Claimant's testimony was incredible. The medical evidence in many instances does appear to support Claimant's assertion of limitations on her ability to work. On remand, the ALJ shall evaluate the factors contained in the ruling and link his findings to specific evidence in the record.

### Treating Physicians Opinions

Claimant also challenges the evaluation of Dr. Friedman's opinions by the ALJ. While Defendant first argues Dr. Friedman was not Claimant's treating physician, the non-examining agency reviewers certain did so. However, Defendant's position points up one of the fallacies in the ALJ's decision. Namely, he did not state the weight provided to each medical opinion, generally, and

11

Dr. Friedman's opinion, specifically.

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support

12

or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted). On remand, the ALJ shall discuss Dr. Friedman's status as a treating physician and the weight he believes her opinion should be afforded.

### Availability of Jobs

Claimant also contends the ALJ improperly found jobs were available in the economy which accommodate her limitations. In reality, Claimant argues improperly limiting questions were posed to the vocational expert such that her restrictions concerning reaching were not included. On remand, the ALJ shall insure all of Claimant's restrictions are included in any questioning of a vocational expert.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not

applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given ten (10) days from the date of the service of these Findings and Recommendations to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Findings and Recommendations within ten (10) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 21st day of January, 2009.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE